**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-CV-62009-RAR**

**MARY A. SMALL,**

  Plaintiff,

v.

**CITY OF HOLLYWOOD,**

  Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

  **THIS CAUSE** comes before the Court upon Defendant City of Hollywood's Motion for Summary Judgment [ECF No. 44] ("Motion").[1]  Having considered Defendant's Motion, the record, and being otherwise fully advised, it is hereby

  **ORDERED AND ADJUDGED** that Defendant's Motion [ECF No. 44] is **GRANTED** for the reasons stated herein.

## BACKGROUND

  Plaintiff Mary Small alleges she was subjected to a hostile work environment while employed by Defendant City of Hollywood (the "City") and subsequently retaliated against for reporting allegedly discriminatory incidents.  *See generally* Am. Compl. [ECF No. 25].  The City moves for summary judgment on all of Small's claims.  The following facts are—unless otherwise noted—not genuinely disputed.  Small began working within the City's Parks, Recreation and Cultural Arts Department ("PRCA") as the Grants & Special Projects Manager in February 2020.  Def., City of Hollywood's Statement of Material Facts in Supp. of Mot. for Summ. J. [ECF No.

---

[1]  The Motion has been fully briefed and is ripe for adjudication.  *See* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. [ECF No. 48] ("Response"); Reply in Supp. of Mot. for Summ. J. [ECF No. 49] ("Reply").

43] ("Def.'s SOMF") ¶ 1.  While employed with the City, Small's direct supervisor was the Assistant Director of the PRCA, David Vazquez, and the Director of the PRCA was Cory Styron. Def.'s SOMF ¶¶ 5–6.  For the first year of her employment, Small was subject to a one-year probationary period, during which she was "serving a trial period to determine [her] fitness or ability to perform" her duties, and she could "be terminated from the City at any time."  *See* Probationary Policy [ECF No. 43-7]; Def.'s SOMF ¶ 13.[2]

### I.  Initial Comments Relevant to Plaintiff's Hostile Work Environment Claims

Small bases her hostile work environment claims on three comments that were made during her employment with the City, two of which were made shortly after her employment began.  The first comment was made during Small's first week of employment, when she arrived late to a "site visit."  Am. Compl. ¶ 16.  Because Small was late, Mike Wharton—a white employee Small was meeting at the site—allegedly asked Small "if she was on CP time."  Am. Compl. ¶ 16; Def.'s SOMF ¶¶ 18–19.  Wharton also purportedly referenced "Mexican time" because another PRCA manager who was late to the site visit, Joaquin Arellano, is Hispanic.  Def.'s SOMF ¶¶ 18–19. The City denies Wharton made these comments.  Reply Statement of Material Facts [ECF No. 50] ¶ 96.  After these comments were made, Small, Wharton, and Arellano seemingly completed the site visit without further incident.  *See* Small Dep. 81:19–21.  Small did not report this incident to a superior.  Def.'s SOMF ¶ 20.

The second incident occurred in March 2020, during a meeting of the PRCA Advisory Board.  *See* Def.'s SOMF ¶ 27.  The PRCA Advisory Board is comprised of a "group of citizens

---

[2]  The Court notes that while Small purports to dispute this paragraph, the portion of her deposition she cites clearly shows she "understood" her position was probationary because "most positions are probationary," and that Vazquez "emphatically brought [the probationary nature of the position] to [her] attention . . . . like two days after [she] started."  Tr. Dep. Mary Small [ECF No. 43-11] ("Small Dep.") 50:19–51:10.  Given that Small's citations support this fact, the Court fails to see how it is disputed.

who provide advice to the PRCA."  Def.'s SOMF ¶ 28.  Its members are neither elected City

officials nor City employees.  *Id.*  The record makes clear that at this meeting, a PRCA Advisory

Board member made a comment relating to "Jamaicans," but recollections regarding the nature of

this comment vary greatly.  Small was not in attendance and only learned about the comment after

the fact, but she believes the comment was a "slur concerning Jamaicans taking all the jobs and

working multiple jobs."  Am. Compl. ¶ 17; *see also* Def.'s SOMF ¶¶ 33–34.  It is undisputed that

Small is not of Jamaican descent or nationality.  *See* Decl. of Mary Small [ECF No. 47-2] ("Small

Decl.") ¶ 3.  Sandra Betton, a black, Jamaican PRCA employee who attended the meeting,

remembers the board member saying that "he has so many jobs, he felt like a Jamaican."  Decl. of

Sandra Betton [ECF No. 43-8] ("Betton Decl.") ¶ 5.  Meanwhile, Lori Loughman—another PRCA

employee in attendance—remembers the comment being something "to the effect of needing to be

Jamaican to attend a PCRA [sic] Board Meeting."  Decl. of Lori Loughman [ECF No. 43-10]

("Loughman Decl.") ¶ 6.  And Vazquez, who was also in attendance, simply remembers it was "a

comment . . . about Jamaicans and the number of jobs they hold or have."  Tr. Dep. David Vazquez

[ECF No. 43-3] ("Vazquez Dep.") 29:23–25.

Though Small apparently learned about this comment from Betton, it is disputed whether

Betton was offended by the comment.  *Compare* Small Dep. 91:13–15 ("I said . . . Sandra, were

you offended?  And she said, yes, I was offended."), *with* Betton Decl. ¶ 7 (stating that Betton "did

not take offense to this" comment).  Whether Betton represented she was offended or not, Small

proceeded to report the comment to three people: first to David Vazquez, then to Cory Styron, and

finally to Joshua Kittinger, an employee in the City's human resources department.  Def.'s SOMF

¶¶ 34, 37–39; Small Dep. 88:7–15, 95:6–11; *see generally* Kittinger Email Chain [ECF No. 43-1].

Small testified that she simply reported the comment to Vazquez to escalate it up the chain of

command within the PRCA to "get it off [her] plate."  Small Dep. 96:19.  According to Small,

Vazquez responded with threats of termination as well as references to the fact Small was still subject to the probationary policy.  Small Dep. 96:22–24, 97:17–24.  It is disputed whether Vazquez made these comments.  *See* Vazquez Dep. 32:22–33:6.  Other than this disputed fact, however, there is no evidence Small and Vazquez discussed this comment any further.  Small's subsequent report of the comment to Styron appears to have been uneventful based on the evidence in the record.  Small Dep. 88:10–15, 99:15–101:5.

Small then made Kittinger aware of the comment in an email conversation she initiated to inform him she would begin looking for other employment opportunities with the City.  Kittinger Email Chain at 3.  In her initial email, Small noted issues she faced working with Vazquez, several of which she claimed began after she "told him that a [sic] ethnically charged comment was made in his presence and two of the employees said he did nothing."[3]  *Id.*  Though Small did not include any information about this "ethnically charged comment" other than the fact it was "made by a Board member," *id.* at 4, the parties acknowledge this was a reference to the comment made by the PRCA Advisory Board member.  Def.'s SOMF ¶¶ 37–40.  Out of an abundance of caution, Small requested that Kittinger keep this communication confidential.  Kittinger Email Chain at 3.  After Kittinger responded to Small's initial email, Small sent a follow-up email that catalogued further issues she faced while working at the PRCA.  *Id.* at 1–2.  Among these concerns, Small recounted an interaction she had with Arellano during which she told Arellano he "described systemic discrimination" after Arellano informed her that she had a lower salary than other

---

[3]  One claim reflected in this email chain is Small's assertion that Vazquez monitored her hours at work strictly, which he denies doing.  *Compare* Small Decl. ¶ 16, *with* Vazquez Dep. 34:6–12.  However, there is no evidence that, even assuming this occurred, Vazquez did so while Small was away from the office telecommuting.  Small Dep. 135:11–13 ("It was when I was working in the office.  When I was outside the office, I don't remember him monitoring my time . . . .").  This is significant because Small's time telecommuting represented almost half of her employment with the City.  *See* March 24 Email [ECF No. 43-17] at 2 (reflecting Small would begin telecommuting on March 25, 2020); Vazquez Dep. 33:15–16 (showing Small returned to the office "mid-May").

managers within the PRCA.  *Id.* at 1.  Small did not elaborate, however, if this alleged

discrimination was based on a protected characteristic; what evidence she had confirming the other

managers actually had higher salaries; and, assuming they did, what caused her to suspect this was

a result of discrimination.[4]  This interaction ended with Kittinger noting he would "refrain from

discussing [the communication] in-house in HR," and Small does not dispute Kittinger's claim

that he did not disclose their communication.  Kittinger Email Chain at 1; *see* Def.'s SOMF ¶ 38.

## II.  Employment Concerns Raised by the City

The record also makes clear that Styron and Vazquez quickly noted concerns with Small's

job performance.  For example, approximately twenty workdays after beginning her employment,

Small asked for the City's policy on terminating probationary employees.  Def.'s SOMF ¶¶ 58–60.

The City eventually learned Small asked for the policy because she wanted to recommend that the

City terminate or otherwise reprimand Lori Loughman, an administrative assistant who reported

to Small.   Def.'s SOMF ¶¶ 58–60;[5] *see also* Loughman Decl. ¶¶ 3, 16; March 16 Email [ECF

No. 43-18].  It is undisputed, however, that Small did not possess the authority to terminate

Loughman.  Def.'s SOMF ¶ 61.  Small and Loughman crossed paths again after Loughman took

---

[4]  Small now attempts to cast this as a complaint about race discrimination.  Resp. at 5.  However, the email makes no reference to race discrimination specifically.  *See generally* Kittinger Email Chain at 1.  Indeed, a review of the City's response to Small's EEOC complaint implies she believed the difference in pay was at least partially attributable to the fact the other managers were male, which is a claim she no longer advances.  *See* EEOC Rebuttal Position Statement [ECF No. 43-4] at 7 ("I was paid less than my predecessor and other similarly situated male managers.").  The City's response also reflects that while Small was paid less than the referenced managers, this was due to several nondiscriminatory reasons, including that the other managers were in a union and had longevity pay added to their salaries.  *See id.* at 7–8.

[5]  While Small disputes the final paragraph, a review of the evidence she cites in response indicates this is because the City only claims she wanted to terminate Loughman, while Small testified that she wanted to terminate *or* reprimand her.  *Compare* Def.'s SOMF ¶ 60 (stating "it became clear" Small wanted to terminate Loughman), *with* Small Dep. 71:22–24 (stating Small wanted to "reprimand her for her behavior or terminate her").  Thus, the parties agree that Small considered terminating Loughman.

leave to care for her elderly parents at the beginning of the COVID-19 pandemic.  *See* Def.'s SOMF ¶ 63.  After this leave began, Small informed Loughman, through email, that Loughman would need to produce a doctor's note to return to work.  *See* Small Decl. ¶ 13.  Loughman claims this led to her feeling "unduly harassed" by Small.  Loughman Decl. ¶ 14.[6]  Additionally, there is unrebutted evidence of discrete instances in which Styron appeared somewhat unsatisfied with Small's job performance.  For example, Styron expressed to Small that he felt she was "a little terse" to administrative staff in one email.  April 15 Email Chain [ECF No. 43-16] at 1.  Styron also denied Small's request to hire an intern as unnecessary, partly because some of Small's proposed duties for an intern were "part of [her] job."  *See* May 18 Email Chain [ECF No. 43-15] at 1–3.

Most significantly, some of Small's duties were reassigned to Betton and Vazquez shortly after Small began working for the City.  Def.'s SOMF ¶¶ 67–68.  The City argues this was necessary, at least in part, because tension had formed between other PRCA employees and Small. In support of this argument, several PRCA employees attest that they believe Small "displayed harassing behavior towards her subordinates and made off-color or condescending comments." Loughman Decl. ¶ 9; Betton Decl. ¶ 14; Decl. of Notosha Lake [ECF No. 43-9] ¶ 6.  Vazquez testified that "[t]here was a lot of tension when Mary Small worked in the office within the administrative role team."  Vazquez Dep. 40:14–15.  Styron testified that he observed "issues with her and staff."  Tr. Dep. Cory Styron [ECF No. 43-6] 39:7–12.  And Small herself acknowledged this tension several times.  In her email to Kittinger, she noted that "people have told [her] that the Parks department environment is toxic" and that it was "very clear why."  Kittinger Email Chain

---

[6]  The fact Small attests that she "never [saw]" Loughman cry and was never told any "concern about [her] dealings with" Loughman does not make this fact disputed.  Small Decl. ¶ 14.  What appears disputed, however, is whether Small asked for this note on her own initiative or whether Vazquez directed her to ask for it.  *See* Small Decl. ¶ 13.

at 4.  Small also claimed in an email to Styron that one employee told others to "beware of" Small

and to "avoid and not help" her.  May 18 Email Chain at 1.  This same email reflects that Small

believed administrative staff "g[o]t very cold" if someone was seen talking with her.  *Id.*  And in

her deposition, Small testified that there was "a lot of . . . friction" in the office, that Betton "made

some comments that [Small] didn't particularly like," and that "it got progressively worse."  Small

Dep. 63:14, 131:15–132:1.[7]

### III.  Final Comment Relevant to Plaintiff's Hostile Work Environment Claims

The third and final incident relevant to Small's hostile work environment claims occurred

in May 2020, when Small, Betton, and Felissa Yarns, a member of the City's human resources

department, served on an interview panel together to interview a candidate for an opening at the

PRCA.  Def.'s SOMF ¶ 22.  Small claims that during a discussion between the three, Betton made

a comment implying that "all African Americans[] are lazy."  Opponent's Statement of Material

Facts [ECF No. 47] ("PSMF") ¶ 98.  Small now testifies the comment was to the effect "that

Jamaicans . . . think that African Americans are lazy."  Small Dep. 138:4–9.  The City disputes

this comment was made.  Reply Statement of Material Facts ¶ 98.  The parties do not dispute that

Small never formally complained about this incident.  Def.'s SOMF ¶ 25.  Small maintains,

however, that she reported this comment when she "looked at" Yarns after the comment was made

---

[7] Despite the vast amount of evidence on this point, Small now claims she "did not have any issues with
the administrative staff," and that "[t]here were not any negative changes in the mood of the office that
[she] observed," while also claiming "the work environment at the City was negative and not family-like."
Small Decl. ¶¶ 2, 10–11.  Small averring that she did not *personally* observe a negative mood change does
not rebut the undisputed evidence that her fellow employees felt the work environment worsened after her
arrival.  Additionally, while a self-serving affidavit can defeat summary judgment, an affidavit that is
conclusory or not based on personal knowledge cannot.  *See Rodda v. Univ. of Miami*, 542 F. Supp. 3d
1289, 1295 (S.D. Fla. 2021) (citing *United States v. Stein*, 881 F.3d 853, 857–59 (11th Cir. 2018)).  "The
word 'conclusory' may be defined as '[e]xpressing a factual inference without stating the underlying facts
on which the inference is based.'"  *Id.* (quoting *Conclusory*, BLACK'S LAW DICTIONARY (11th ed. 2019)).
Small does not attest to any underlying facts relating to her knowledge of the PRCA's environment before
she was hired.  Thus, this portion of her affidavit lacks probative value as to this issue and is too conclusory
to create a genuine issue of material fact.  *See id.*

because she "expected [Yarns] to address it." Small Dep. 139:12–13.[8]  In Small's own words from her Response: "when [Small] looked at Felicia Yarns directly after the African Americans are lazy comment, the Plaintiff was complaining of yet more hostility in the workplace." Resp. at 5.  There is no evidence cited that indicates there was any further incident at this meeting. *See* Def.'s SOMF ¶ 23.

### IV. Termination and Procedural History

Ultimately, the City decided to terminate Small.  Vazquez and Styron gave initial recommendations regarding Small's potential termination, but the final decision to terminate Small was made by the City's human resources department.  PSMF ¶ 85.  The record does not reflect who within the human resources department made the decision to terminate Small, but Kittinger was not involved in the decision.  Def.'s SOMF ¶ 42.  The City issued Small a formal termination letter on June 1, 2020, which stated that Small was being terminated due to her "failure to meet probationary expectations."[9]  Termination Letter [ECF No. 43-19] at 1.  Small then dual filed charges with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission.  Am. Compl. ¶¶ 9–10.  After receiving a Right to Sue Letter, Small filed her action in Florida state court, and the City removed this action on September 24, 2021.  *See* Notice of Removal [ECF No. 1].  Small's Amended Complaint asserts three claims against the

---

[8]  During this portion of Small's deposition, she also claimed that she said, "I deal with this all the time" and "[t]his is every day for me" to Yarns following Betton's comment.  Small Dep. 140:3–4.  Notably, despite this passing reference to other comments, Small has not brought any to the Court's attention, and she seemingly no longer claims this was an aspect of her "reporting" the comment.  *See generally* Resp. (making no reference to these comments).

[9]  There are several other disputed facts regarding Small's employment with the City.  For example, it is disputed whether Small frequently slammed her door.  *Compare, e.g.*, Betton Decl. ¶ 17, *with* Small Decl. ¶ 12.  It is also disputed whether Small attempted to change the name of the PRCA or otherwise suggested that the City change the name of the organization.  *Compare, e.g.*, Styron Dep. 20:24–21:5, *with* Small Decl. ¶ 6.  However, though these facts are disputed, they are not material, because even assuming Small did neither of these things, it does not change the City's underlying bases for her termination.

City: (i) discrimination on the basis of race due to a hostile work environment in violation of the Florida Civil Rights Act ("FCRA"); (ii) discrimination on the basis of race due to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964; and (iii) retaliation in violation of Title VII of the Civil Rights Act of 1964.  *See generally* Am. Compl.

## LEGAL STANDARD

Summary judgment is rendered if the pleadings, discovery, disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable factfinder to find for the non-moving party.  *See id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  At summary judgment, the Court views the evidence "in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), the moving party bears the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party.  *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

If there are any factual issues, summary judgment must be denied, and the case proceeds to trial.  *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 12-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013).  Furthermore, when the parties "agree on the basic facts, but disagree about the inferences that should be drawn from these facts[,]" summary judgment "may be inappropriate." *Id.*  However, "[a] mere 'scintilla' of evidence" in support of the non-movant's position will not suffice. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## ANALYSIS

### I. Hostile Work Environment

Small asserts hostile work environment claims under both section 760.10 of the Florida Statutes and Title VII.  Am. Compl. ¶¶ 35–50.  The City argues that, even assuming the three comments described in the Amended Complaint were made, Small's workplace was not sufficiently hostile to maintain these claims.  The Court agrees.

Title VII prohibits an employer from discriminating against an individual with respect to the person's "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).[10]  Requiring an individual to work in a "discriminatorily hostile or abusive environment" falls within this prohibition.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  However, "Title VII is not a 'general civility code,'" *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)), and a work environment is only hostile when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris*, 510 U.S. at 21 (citation and internal quotation marks omitted).

A plaintiff asserting a hostile work environment claim must establish that (1) the plaintiff "belongs to a protected group"; (2) the plaintiff was "subject to unwelcome harassment"; (3) the harassment was "based on a protected characteristic of the employee"; (4) the harassment

---

[10]  The FRCA similarly provides that employers may not "discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."  Fla. Stat. § 760.10(1)(a).  This is construed in conformity with Title VII.  *See, e.g.*, *Matias v. Sears Home Improvement Prods.*, 391 F. App'x 782, 785 (11th Cir. 2010); *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

experienced "was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) there is a basis for holding the employer "responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

The fourth element—the requirement that the harassment be sufficiently severe or pervasive—frequently "tests the legitimacy of most harassment claims." *Barrow v. Ga. Pac. Corp.*, 144 F. App'x 54, 56 (11th Cir. 2005). To satisfy this element, a plaintiff's work environment must have been "both subjectively and objectively hostile." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1249 (11th Cir. 2014) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)). Courts determine the objective hostility of a work environment by considering the harassment "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (quoting *Mendoza*, 195 F.3d at 1246). Generally, the "'mere utterance of an epithet which engenders offensive feelings in a [sic] employee' . . . does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (alteration accepted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). To rise to the level of conduct prohibited by Title VII, "the racial slurs allegedly spoken by co-workers had to be so 'commonplace, overt and denigrating that they created an atmosphere charged with racial hostility.'" *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting *EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990)); *see also Shine v. Univ. of Ala. – Birmingham*, No. 22-10333, 2023 WL 1099766, at *3 (11th Cir. Jan. 30, 2023) ("Isolated or sporadic incidents of harassment are not objectively severe or pervasive enough to alter the terms or conditions of employment."). Four factors guide the court's analysis when determining the objective hostility of a work environment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the alleged behavior was "physically threatening or humiliating, or a mere

offensive utterance"; and (4) whether the conduct "unreasonably interfere[d] with an employee's work performance." *Allen*, 121 F.3d at 647 (quoting *Harris*, 510 U.S. at 23).

The parties have several disputes relating to the comments contained in the Amended Complaint, including whether the at-issue statements were made, and if they were, what the comments might have been. These disputed facts are not material, however, because even accepting Small's version of events as true she has failed to establish her work environment was objectively hostile. Thus, while the Court recognizes the City challenges Small's version of events, the Court discusses the relevant facts in the light most favorable to Small.

Small only points to three comments made over the course of her employment, two of which occurred months before she was terminated, to support her claims. As a preliminary matter, the Court begins with Small's attempted reliance on the comment relating to "Jamaicans" made by the PRCA Advisory Board member. *See* Mot. at 4. The Court agrees with the City that Small may not rely on this comment. A plaintiff must establish that unwelcome harassment was "based on" the plaintiff's protected characteristic. *Miller*, 277 F.3d at 1275. Small admits she is not Jamaican, but she nonetheless implies she may support her hostile work environment claims with this comment because "Jamaicans . . . are African Americans." *See* Resp. at 3. Given the absence of any record evidence that this comment was in fact about a group to which Small belongs—or was otherwise targeted at Small—the Court finds this argument unavailing.

However, even assuming Small may rely on the PRCA Advisory Board member's comment, she has still failed to establish her workplace was objectively hostile. Three comments made during a period of over three months is infrequent. *See Brathwaite v. Sch. Bd. of Broward Cnty., Fla.*, 763 F. App'x 856, 859 (11th Cir. 2019) (noting that during the relevant four-month period "there was only one instance of physical harassment and four racially-charged comments"); *Johnson v. Booker T. Washington Broad. Serv.*, 234 F.3d 501, 509 (11th Cir. 2000) (describing

roughly fifteen incidents over the course of four months as "not infrequent").  The comment regarding "Jamaicans" was made outside of Small's presence and, consequently, was also not directed at Small.  *See McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008) (stating that some racial epithets "were never directed" at the plaintiff nor "spoken in her presence").  Similarly, though Small was present to hear Betton's comment, this comment was not directed at Small, and—while insensitive—appears to have simply been a "mere offensive utterance."  *Allen*, 121 F.3d at 647.  There is also no evidence the two comments made in Small's presence were made in a physically threatening way, and neither of the comments appear to have affected Small's job performance, as she completed both the meeting and site visit without further incident.  Finally, the fact Small did not report the "CP time" comment at all and did not complain of Betton's comment beyond looking at Yarns emphasizes the lack of severity present here.  *See Ricks v. Indyne, Inc.*, No. 21-13051, 2022 WL 8022536, at *4 (11th Cir. Oct. 14, 2022) (noting the plaintiff did not report harassment to her superiors).  Thus, evaluating the objective hostility of Small's work environment, the factors weigh in favor of the City.

In sum, viewing the factual contentions in the light most favorable to Small, a reasonable jury could not find these three comments sufficient to establish that racial epithets were amply "commonplace, overt and denigrating" to render Small's work environment hostile.  *Edwards*, 49 F.3d at 1521–22 (citation omitted).  These comments are merely "[i]solated or sporadic incidents" that are not the concern of Title VII.  *Shine*, 2023 WL 1099766, at *3.  Thus, summary judgment in favor of the City as to Small's hostile work environment claims is warranted.

## II.  Retaliation

Title VII prohibits an employer from discriminating against an employee both "because [s]he has opposed any practice made an unlawful employment practice by [Title VII]," and "because [s]he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under" Title VII.  42 U.S.C. § 2000e-3(a).  The former, known as the opposition clause, is relevant here because Small only made complaints within her organization.

Where a plaintiff does not rely on direct evidence of discrimination, courts use the *McDonnell Douglas* framework to analyze a claim of retaliation.[11]  *E.g.*, *Smelter v. S. Home Care Servs.*, 904 F.3d 1276, 1293 (11th Cir. 2018).  First, the plaintiff must establish a *prima facie* case of retaliation by demonstrating (1) she "engaged in a statutorily protected activity"; (2) she "suffered an adverse employment action"; and (3) there is "a causal link between the protected activity and the adverse action." *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009).  Once the plaintiff establishes a *prima facie* case, there is a presumption of discrimination, and the employer must articulate "a legitimate, nondiscriminatory reason" for the adverse action to rebut the presumption.  *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1312 (11th Cir. 2016).  If an employer offers a sufficient nondiscriminatory reason, the burden shifts back to the plaintiff, who must put forward evidence that the employer's given reason was a pretext for discrimination.  *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010).  It is at this point that "the plaintiff's burden merges with the ultimate burden of persuading the court that the plaintiff has

---

[11]  Whether a plaintiff may also establish retaliation under the "convincing mosaic" theory is unsettled in the Eleventh Circuit.  *See Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021).  Because Small has not advanced this theory to support her retaliation claim, the Court has no need to consider it.  *Id.* (noting that the Eleventh Circuit had "no occasion to consider" whether the convincing mosaic theory can sustain a retaliation claim because the plaintiff abandoned the argument on appeal); *cf. Hallman v. Thompson Tractor Co.*, No. 21-1423, 2023 WL 374419, at *4–5 (N.D. Ala. Jan. 24, 2023) (foregoing *McDonnell Douglas* analysis of a discrimination claim because the plaintiff did not attempt to rely on that theory).

Had Small pressed this argument, however, her claim would fail.  Plaintiffs traveling under the convincing mosaic theory of retaliation must still show any protected activity was the but-for cause of the adverse action challenged.  *See Curet v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 21-1801, 2022 WL 4464751, at *12 (M.D. Fla. Sept. 26, 2022) (citing *Bailey*, 992 F.3d at 1274).  As discussed below, Small has not offered sufficient evidence to allow a jury to find any protected activity was the but-for cause of her termination.

been the victim of intentional discrimination." *Furcron*, 843 F.3d at 1311 (cleaned up) (quoting *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011)). This framework serves to "filter out particularly obvious cases and works to frame more clearly the specific issues to be litigated," and the "critical decision" for the court to make is "whether the plaintiff has created a triable issue concerning the employer's discriminatory intent." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327,1336 (11th Cir. 2015) (alteration accepted) (internal quotation marks omitted).

The City argues it is entitled to summary judgment on Small's retaliation claim for two reasons: (1) Small has failed to establish a *prima facie* case of retaliation because she did not engage in statutorily protected activity; and (2) the City terminated her for a nondiscriminatory reason that was not pretextual. Mot. at 7–14. The Court agrees as to both arguments and addresses them in turn.

### a. *Plaintiff Has Not Established a* Prima Facie *Case*

To qualify for protection under the opposition clause, the plaintiff's "opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997)). A plaintiff has only engaged in protected activity if the plaintiff "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Furcron*, 843 F.3d at 1311 (quoting *Little*, 103 F.3d at 960). As with a hostile work environment claim, this "includes both a subjective and an objective component." *Id.* The plaintiff must show both that: (1) she subjectively believed her employer engaged in an unlawful practice, and (2) that this belief "was *objectively* reasonable in light of the facts and record presented." *Little*, 103 F.3d at 960. In determining whether a plaintiff reasonably believed an employer engaged in an unlawful practice, a court must look to

substantive law, because "if . . . plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1317 (11th Cir. 2002) (alteration accepted) (quoting *Harper*, 139 F.3d at 1388 n.2).

Of course, "not every uncalled for, ugly, racist statement by a co-worker is an unlawful employment practice." *Butler*, 536 F.3d at 1213.  And where a plaintiff complains about a single comment that was not made at the place of employment and was not directed at the plaintiff, the plaintiff's belief that the employer engaged in an unlawful practice is likely unreasonable.  *See id.* (noting the reported epithets were said "away from work," were not "within the hearing of any supervisors," were not directed at the plaintiff, and did not affect the plaintiff's job performance); *see also Ceus v. City of Tampa*, 803 F. App'x 235, 247 (11th Cir. 2020) (stating the plaintiff "complained about a single incident" in which a co-worker "made negative comments" that were not directed at the plaintiff while away from the workplace).

Small does not dispute that she never reported the comment allegedly made by Mike Wharton.  Def.'s SOMF ¶ 20.  As to the other two comments, Small puts forward four instances of purportedly protected activity: three instances in which she reported the PRCA Advisory Board member's comment and one in which she reported Betton's comment.  Resp. at 4–5.  Even assuming these events occurred as Small argues they did, none of these instances qualify as protected activity.

### i.  Reports of the PRCA Advisory Board Member's Comment

Small claims she reported the comment made by the PRCA Advisory Board member on three occasions: twice orally—once to Vazquez and once to Styron—and once via email to Kittinger.  Resp. at 4–5.

### 1. *Reports to David Vazquez and Cory Styron*

Small's deposition testimony reflects she reported the comment to Vazquez to "get[] it off [her] plate." Small Dep. 95:6–11. Additionally, Small testified that she simply "told [Styron] that [she] reported it to" Vazquez and that she was "now . . . telling him." Small Dep. 88:7–15. Even assuming Small subjectively believed the City was engaged in an unlawful employment practice, her belief was not objectively reasonable. Complaints about single instances of "uncalled for, ugly, racist statement[s]" are not the kind of activity protected by Title VII. *See Butler*, 536 F.3d at 1213. As the Eleventh Circuit recognized in *Little*, "a racially derogatory remark by a co-worker, without more, does not constitute an unlawful employment practice." *Little*, 103 F.3d at 961. And "[w]here binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer . . . an employee's contrary belief that the practice is unlawful is unreasonable." *Butler*, 536 F.3d at 1214. While the PRCA Advisory Board member is not a co-worker, Small otherwise opposed the same conduct the Eleventh Circuit squarely held was not an unlawful employment practice in *Little*: a single derogatory remark. While Small might have believed she was opposing an unlawful employment practice, this belief was not objectively reasonable, and therefore her activity was not protected by Title VII.

### 2. *Email to Kittinger*

The parties agree the "ethnically charged comment" mentioned in Small's email to Kittinger is the PRCA Advisory Board member's comment. Accordingly, the Court has already explained why Small did not possess an objectively reasonable belief she was opposing an unlawful employment practice in making Kittinger aware of this comment. As to Small's other claim of discrimination, while the email references "systemic discrimination," Small offers no evidence to support a reasonable belief that—even assuming the other managers in her department were paid more than Small—the reason for this disparity was discriminatory. It appears from the

record evidence that Small simply based her belief of systemic discrimination on the fact Arellano told her the other managers had a higher salary.[12]

However, nowhere in the email does Small say what characteristic this discrimination was based on, and without personal knowledge or proof of discrimination, Small could not have an objectively reasonable belief the City was engaged in unlawful discrimination. *See Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (noting that the plaintiff, during an underlying grievance hearing, "made no allegation and offered no proof of race or national origin discrimination"); *Diamond v. Morris, Manning & Martin, LLP*, 457 F. App'x 844, 846 (11th Cir. 2012) (holding the plaintiff did not have a reasonable belief her employer engaged in race discrimination without knowing what work white paralegals were assigned); *Harris v. Dep't of Child. & Fams.*, No. 19-62842, 2021 WL 6750969, at *4 n.3 (S.D. Fla. Apr. 16, 2021) (doubting whether the plaintiff engaged in a protected activity where the plaintiff referenced "harassment" and a "hostile work location," and stated the employer's activities "appear[ed] biased and where EEOC maybe [sic] applicable" but did not reference "discrimination, harassment, or bias *based on a protected characteristic*" (emphasis added)).

A reasonable factfinder could not find Small had an objectively reasonable belief she was opposing an unlawful employment practice, and thus her communication to Kittinger also fails to qualify as protected activity.[13]

---

[12]  Plaintiff has also seemingly failed to rebut the City's legitimate bases for the pay disparity reflected in the record. *See* EEOC Rebuttal Position Statement at 7.

[13]  The City also raises the fact that Kittinger never disclosed this communication to another City employee and was not involved in the decision to terminate Small. *See* Mot. at 7–8; Reply at 6. Because these facts relate to causation, this appears to be a challenge to the causal element of Small's *prima facie* case. Small seemingly attempts to rebut this by claiming "HR" was involved in her termination process. Resp. at 5. To establish causation, a plaintiff "must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (quoting *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)); *see also Raney v. Vinson Guard Serv.*, 120 F.3d 1192, 1197 (11th Cir. 1997)

## ii. *"Report" of Betton's Comment*

Small also argues she was retaliated against because she reported Betton's comment to Felicia Yarns, the human resources employee who was present when the comment was made. The "report" of this comment fails for largely the same reason as Small's previous reports: Small could not reasonably believe she was opposing an unlawful employment practice. If Betton did make the statement that "African Americans are lazy," this was indeed an "uncalled for, ugly, racist statement." *Butler*, 536 F.3d at 1213. But without more, this single racially derogative remark does not rise to the level of an unlawful employment practice. *Little*, 103 F.3d at 961. Though Small is African American, the undisputed evidence reflects this comment was not directed at Small. *McCann*, 526 F.3d at 1379 (noting that some of the at-issue language was not directed at the plaintiff). Thus, other than the fact Betton's comment was made in the workplace, the comment here is otherwise like the comment in *Butler*. *See Butler*, 536 F.3d at 1214 (holding it is "objectively unreasonable to believe" a single instance of racially discriminatory language made outside of the workplace creates a hostile work environment). Put simply, Small has not offered any evidence of the "more" required by substantive law to transform this single racially

---

("[P]laintiff must, at a minimum, generally establish that the defendant was *actually aware of the protected expression* at the time the defendant took the adverse employment action." (emphasis added)). Small does not dispute: (1) that this communication was only to Kittinger; (2) that she asked him to keep it confidential; (3) that he did keep it confidential; and (4) that Kittinger had no role in the decision to terminate her. Def.'s SOMF ¶ 42; *see also* PSMF ¶ 85. Thus, it is doubtful a reasonable factfinder could find that Small's termination and this communication were anything but wholly unrelated. Small's attempt to cure this obvious deficiency by referring to "HR" collectively as "play[ing] a role in the decision-making process" is unpersuasive given it is undisputed the person in "HR" who participated in her termination process was unaware of this communication. Resp. at 5; *see Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct."); *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1328 (11th Cir. 2020) (holding that a period of two months between the protected activity and the adverse action was insufficient without "any other evidence of pretext").

insensitive comment into an unlawful employment practice.  Without this, Small could not have an objectively reasonable belief she was opposing an unlawful employment practice.

The objective unreasonableness of Small's belief is further underscored by the method through which she claims to have reported this comment.  Small argues she reported this comment by simply "look[ing] at Felicia Yarns."  Resp. at 5.  An employee claiming to have engaged in protected activity, however, must have communicated the employee's belief that the employer was engaged in discrimination.  *Furcron*, 843 F.3d at 1311.  Where the employee voices a complaint but does not reference discrimination or a protected characteristic, the employee's opposition will not constitute protected activity.  *See Rodriguez v. Miami Dade Cnty. Pub. Hous. & Cmty. Dev.*, 776 F. App'x 625, 626 (11th Cir. 2019) (noting plaintiff "never specified that the harassment was based on, or involved derogatory comments about, her national origin").  Even allusions to racism—without further reference to discrimination—do not constitute protected activity.  *See Ceus*, 803 F. App'x at 246 (noting that while plaintiff "decrie[d] racism" within his employer he did "not tie that assertion to any specific discrimination he or anyone . . . faced").  Assuming Small's use of a mere "look" constitutes reporting this conduct—which the Court severely doubts—it nonetheless could not convey the critical information required by caselaw: that Small was opposing what she believed to be a discriminatory practice.  Thus, evaluating the objective reasonableness of Small's belief in light of the substantive law, *see Weeks*, 291 F.3d at 1317, the Court holds that Small did not have an objectively reasonable belief she was opposing an unlawful employment practice.  Therefore, she was not engaging in protected activity when she looked at Yarns.  Taken together with the fact that Small was not engaged in protected activity when she reported the PRCA Advisory Board member's comment, Small has failed to establish any *prima facie* case of retaliation.

### b. *Plaintiff Has Not Shown Pretext*

Assuming a reasonable factfinder could find Small has established a *prima facie* case of retaliation, Small has nevertheless failed to establish that the City's legitimate, nondiscriminatory reasons for her termination were pretextual.

### i. *Nondiscriminatory Reasons*

Once a plaintiff establishes a *prima facie* case, the employer must offer "a legitimate, nondiscriminatory reason" for the adverse action. *Furcron*, 843 F.3d at 1312. This is a "low bar"—the employer only carries a "burden of production that 'can involve no credibility assessment.'" *Flowers*, 803 F.3d at 1336 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Federal courts are not a "super-personnel department" that "second-guess[es] the wisdom of an employer's business decisions." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). The Eleventh Circuit has "emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). "Put frankly, employers are free to fire their employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as [the employer's] action is not for a discriminatory reason." *Flowers*, 803 F.3d at 1338 (citation and internal quotation marks omitted).

The City has offered several explanations for Small's termination, namely that Small was "not a good fit for the PRCA" and "lacked a fundamental understanding of her role." Mot. at 10–11. While some of the bases for these determinations are disputed, a review of the evidence shows that the City has easily met the low bar of producing a nondiscriminatory reason for Small's termination. The City has offered evidence that tension formed between Small and her subordinates; other PRCA employees felt Small displayed harassing behavior; and Small's

administrative functions needed to be reassigned.[14]  Additionally, Styron testified that he felt Small "really never focused on her job," partly because Small attempted to help obtain a grant for the City unrelated to the PRCA.  Styron Dep. 39:7–25.  This, along with other undisputed evidence in the record, easily meets the City's obligation to produce a nondiscriminatory reason for Small's termination.[15]

### ii. Pretext

Once a defendant has proffered a nondiscriminatory reason for its action, the plaintiff must then show that the "proffered reason was merely a pretext to mask discriminatory actions." *Bryant*, 575 F.3d at 1308.  If the employer's purportedly nondiscriminatory reason "might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Champman v. Al Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).  A plaintiff can do so by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).  An employer's proffered reason "is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Springer v. Convergys Customer Mgmt. Grp.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160,

---

[14]  The City also points to the fact that Small "did not understand why her position was a non-union position," which Small does not dispute.  Def.'s SOMF ¶ 50.

[15]  In her Amended Complaint, Small also alleges that she was subjected to greater scrutiny and relieved of her administrative duties in retaliation for reporting the PRCA Advisory Board member's comment.  Am. Compl. ¶¶ 20–22.  Small seems to have abandoned supporting her claim of retaliation with these facts, because she does not cite them in her Response.

1163 (11th Cir. 2006)).  Courts must "remain mindful that it is the plaintiff's burden to provide evidence from which one could reasonably conclude that but for her alleged protected act, her employer would not have fired her."  *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020).

Small has not offered sufficient evidence to establish the City's reasons were pretextual. The only probative evidence Small cites is the statement allegedly made by Vazquez threatening to terminate her after she reported the PRCA Advisory Board member's comment.  However, this single comment is a mere scintilla of evidence when weighed against the plethora of evidence proffered by the City supporting its legitimate, nondiscriminatory reasons for terminating Small. *Walker*, 911 F.2d at 1577.  This is especially so given that Vazquez only provided an initial opinion on Small's termination, after which Styron gave his own recommendation and the human resources department made the final decision.  Small has not proffered sufficient evidence that would allow a reasonable jury to find that "but for her alleged protected act" the City would have retained her. *Gogel*, 967 F.3d at 1136.

First, Small argues the City's proffered reasons are inconsistent with her termination letter, which states that she "fail[ed] to meet probationary expectations."  Termination Letter at 1.  While this language fails to specify what expectations were not met, it is not inconsistent with the City's claim that Small was not a good fit for the PRCA and lacked an understanding of her job functions. The City's probationary policy explicitly states the probation period is used "to determine [an employee's] fitness or ability to perform the specifications of any position," and Small's administrative duties clearly had to be reassigned shortly after she began working for the City. Probationary Policy [ECF No. 43-7].  Second, the Court fails to see how the phrase "probationary expectations" can be inconsistent with the City's desire to have an employee who is a "good fit" within the PRCA—presumably, any employee, especially a managerial employee, would be

expected to fit in with the organization and not cause tension within it.  *See Anterio v. City of High Springs Fla.*, 762 F. App'x 891, 899 (11th Cir. 2019) (holding that the employer established the plaintiff was "not the right fit for the department" in part because the plaintiff's "management style was not popular and . . . morale within the department was low").  As both reasons would clearly motivate a reasonable employer, Small must meet them head on and offer sufficient evidence they are both false and not the real reasons for her termination, which she has not done.

Small next argues she was never made aware of her probationary status and did not sign a document "acknowledging her job description," and it is therefore "implausible" she could not be a good fit when she was "not given the necessary information to perform."  Resp. at 7.  Small's own deposition testimony, however, reflects that she was aware she was on probation.  *See* Small Dep. 50:19–51:10.  Nevertheless, assuming she was unaware of her probationary status, Small essentially argues it was unfair to terminate her if she was not made aware of her job description. Small has again failed to meet the City's reasons head on and offer evidence to rebut them.  Title VII does not prohibit employers from unwise employment practices—only discriminatory ones. *Flowers*, 803 F.3d at 1338.  The fact Small might not have been aware she was on probation does not establish the City's proffered reasons are pretext.  Indeed, Small's claim that she was not aware of her probationary status or job description bolsters, rather than rebuts, the City's argument that she did not understand her role.

Finally, Small raises the fact that the City apparently informed her she would not be precluded from reapplying for employment with the City.  Resp. at 7.  This again fails to present the required weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions Small must put forward.  There is nothing inconsistent with terminating Small for failing to perform her job expectations and allowing her to apply for a future employment opportunity with the City.

In sum, Small has failed to establish a *prima facie* case of retaliation.  And assuming Small has established a *prima facie* case, she has nonetheless failed to rebut her employer's nondiscriminatory reasons for terminating her.  The City is thus entitled to summary judgment as to Small's retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court concludes the City is entitled to summary judgment on all of Small's claims.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the City's Motion [ECF No. 44] is **GRANTED**. Pursuant to Rule 58 of the Federal Rules of Civil Procedure, final judgment will be entered by separate order.

**DONE AND ORDERED** in Miami, Florida, this 28th day of February, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**